## HALLE BROS CO v RONDER

Municipal Court of Cleveland

Decided Nov 26, 1937

Ross C. Brown, Cleveland, for plaintiff.
S. J. Glantz, Cleveland, for defendant.

## OPINION

By COPELAND, J.

The facts in this case disclose that some time during November, of 1924, one Harry Freedman applied to the Halle Bros. Company for credit. He was told at said time that if he could obtain a guarantor that a charge account would be opened. They thereupon gave him a form filled out as follows:

"The Halle Bros. Co.

"In consideration that you open a charge account for Harry Freedman I hereby guarantee to pay the same upon request, at any time after the same is due and unpaid.
"Signed ......... ......"

Mr. Freedman then called upon the defendant, Aaron Ronder, and obtained Mr. Ronder's signature to the aforementioned guaranty. Whereupon Freedman returned to the Halle Bros. Company and presented the aforementioned guaranty and had a further conversation with them whereby it was agreed that a maximum credit of $100 would be extended to him.

At the said time and for some time thereafter the said Harry Freedman was unmarried and so known to be unmarried to the plaintiff and the guarantor.

Freedman continued making purchases on the charge account thus opened and paid same with a fair degree of regularity.

Some time subsequently Freedman mar-

ried without the knowledge of the guarantor Ronder. And after said marriage, Mrs. Freedman called at the place of business of the plaintiff and made purchases for her own use and requested that same be charged to the account of her husband. The credit manager called Mr. Freedman by 'phone and stated to him, in substance, that a lady representing herself as the wife of Mr. Freedman had made purchases and requested that same be charged to his account and wanted to know if that was all right. Whereupon Freedman answered in the affirmative. Such purchases were thus charged to the Freedman account and, as the credit manager stated on the witness stand, from thence on the account was good in the name of Mr. and Mrs. Harry Freedman, although no particular change in the name of the account was made. At no time was any notification of this change in the relationship of the debtor, Freedman, the Halle Bros Company and Ronder brought to the attention of the defendant Ronder and no request at any time was made by Halle Bros. Company of Ronder to determine whether or not he intended his original guaranty to cover additional purchases on the account of Harry Freedman that may be made by Mrs. Freedman.

Numerous transactions were had between Freedman and the Halle Bros. Company, most of which were purchases made by Mrs. Freedman and charged to the account of her husband, Harry Rreedman, and payments made until May 16, 1931, at which time there was due to the plaintiff on the account of Harry Freedman the sum of $271.64 and all of which amount represented purchases made by Mrs. Freedman in her own capacity but charged to the account of her husband as aforesaid.

Shortly thereafter Harry Freedman filed a petition in bankruptcy scheduling the claim of the plaintiff and in due course received a discharge in bankruptcy.

At no time did the plaintiff notify the defendant Ronder of the condition of the account, the additional charges to the account by Mrs. Freedman with the consent of her husband or of the amount due by the debtor Freedman to the plaintiff; on the contrary the first intimation received by the defendant that he was called upon to make good on his guaranty of November 18, 1924, was when the present action was filed and summons issued upon him, viz. September 26, 1936.

While it appears that the plaintiff extended credit to Harry Freedman during November, of 1924, on the faith of the

guaranty of the defendant Ronder, nevertheless there appeared no evidence whatsoever to indicate that the plaintiff increased the amount of credit to the debtor Freedman from $100 to an amount far in excess of that or to the increase in the hazard of the account by permitting purchases to be made by Mrs. Freedman, on the faith of the guaranty of Ronder.

The above and foregoing are the facts in this case found by this court.

The defendant claims that the guaranty in question was not a continuing one. However, this court disagrees with defendant and holds that a fair construction of the contract of guaranty is such as to make it one of an absolute and continuing character until notification by the guarantor to be released therefrom. Not having done so the defendant cannot seek to escape his liability on this theory.

However, we come to a situation which, to this court, is more important in determining the issues and that is whether or not the guaranty in question covered not only purchases made by Freedman but by any other person or persons who might choose to make purchases and charge same to the account of Harry Freedman. And it seems to this court that the intention of the parties must be looked to.

Thus to give effect to the liability imposed upon the respective parties the object should be to ascertain the intention of the parties and such intention should be construed in the light afforded by the circumstances surrounding them at the time it was made. **The Cambria Iron Co. v Keynes et, 56 Oh St 501.**

A fair interpretation of the contract in the light of existing and prevailing conditions at the time of execution thereof would indicate that Ronder intended guaranteeing the payment of merchandise purchased by Harry Freedman—and Harry Freedman alone—and at the regular credit terms extended by Halle Bros. Company to charge accounts generally according to its custom and usage.

If the theory of counsel for plaintiff is tenable, then what was to prevent Harry Freedman from inviting many of his friends to make purchases for their own use and have their own purchases charged to Harry Freedman? In other words, in all of its ramifications if the guaranty in question were to be construed to be so broad as to permit Freedman and all other persons with Freedman's consent to charge such purchases to Freedman without the knowl-

edge of the guarantor, and thus impose added liability and responsibility and hazards upon such guarantor, then such a situation would manifestly entail reading into the contract something that does or did not then exist, and contrary to the intention of the parties at the time of the execution of the guaranty.

It is fundamental that any material change in the obligation of the principal to which the guarantor re- lates by a change or alteration in the terms of the contract between the guaranty and the principal without the consent of the guarantor, will release him from liability thereon providing such change takes place before the guarantor's liability is finally settled. **56 Oh St 501.**

"It is evident that any alteration which imposes on the guarantor a burden or peril which he would not have otherwise incurred is material." 21 R.C.L. 109, paragraph 58.

Certainly one can assume that when an unmarried person makes purchases it will be for such articles that are suitable for the person in that mode or station of life.

It will not do for counsel for plaintiff to say that the purchases made by Mrs. Freedman were done at the instance and request of Harry Freedman and as his agent as is contended by counsel for plaintiff.

To show the injustice of the situation upon the guarantor it is well that we cite some of the facts that occurred in the instant case. For example, after marriage Mrs. Freedman made purchases of furniture at the store of the plaintiff in excess of $500.00 at one time and this amount was charged to the account of Harry Freedman without the knowledge or consent of course, of guarantor. What a vast difference in the situation then as was contemplated between all of the parties when the maximum credit agreed to be extended to Freedman personally at the opening of the account, was $100.00.

By reason of the foregoing, this court holds where a guarantor executes an instrument of guaranty covering purchases to be made on credit by an unmarried person and later such unmarried person marries and purchases are made by the wife or family or others and such purchases are charged to the account of the principal without the knowledge and consent of

the guarantor, such guarantor is released at least to the extent of such purchases thus made by all persons other than by the principal himself.

By reason of all of which (and the evidence clearly showing that all of the purchases made which represent the account due by Freedman to the plaintiff as having been made by Mrs. Freedman and no part thereof having been made by Harry Freedman) the court finds for the defendant. To all of which plaintiff duly excepts.